IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHNNY G. BAILEY                                                                            PLAINTIFF

v.                      CIVIL NO. 05-6076

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Johnny G. Bailey brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplement security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on October 31, 2002, alleging an inability to work since May 15, 1990,[1] due to ankle and neck injuries, arthritis, gout, headaches, hypertension, chest pain and depression. (Tr.54-56, 173-175). An administrative hearing was held on February 1, 2005. (Tr.178-215). Plaintiff was present and represented by counsel.

---

[1] At the administrative hearing before an ALJ on February 1, 2005, plaintiff amended his alleged onset date to November 1, 2002. (Tr. 12, 182).

By written decision dated July 13, 2005, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 20). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform a full range of medium work. (Tr. 21). The ALJ, with the use of the Medical-Vocational Guidelines (Grids), found plaintiff was not disabled. (Tr. 21).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on September 26, 2005. (Tr. 4-6). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties have filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. # 10, 11).

**Evidence Presented:**

At the administrative hearing before the ALJ on February 1, 2005, plaintiff amended his alleged onset date to November 1, 2002. (Tr. 182). Plaintiff testified that he was forty years of age and had obtained a seventh grade education. (Tr. 183, 185).

With regard to physical impairments, plaintiff testified that his left ankle was crushed when he was thrown from a horse. (Tr. 187). Due to the injury, plaintiff underwent surgery which included the placement of a steel plate, pins and screws. (Tr. 187). Plaintiff testified he also underwent a cervical fusion in 1998, or 1999. (Tr. 188). Plaintiff testified he experiences numbness and tingling in his hands which weakens his grip. (Tr. 189-190). Plaintiff explained

that he burned his wrist but did not realize it until he saw smoke. (Tr. 190). Plaintiff further testified that he has gouty arthritis and that every joint in his body hurts. (Tr. 190). Plaintiff testified he also has problems with swelling in his left ankle. (Tr. 191). Plaintiff testified that he experiences headaches and chest pain and has problems with his blood pressure. (Tr. 193-194). From a mental standpoint, plaintiff testified he has been treated for depression. (Tr. 195).

Plaintiff testified he has not sought medical treatment and does not take prescription medication due to the lack of finances. (Tr. 188). Plaintiff testified saw his treating physician for the last time in 2002, when his disability benefit stopped. (Tr. 199). Plaintiff testified he does receive a little pain relief from over-the-counter medication. (Tr. 199).

When asked about physical activities, plaintiff testified he is able to stand for twenty to thirty minutes before he has to sit. (Tr. 191). Plaintiff explained if he stands for longer than that period of time his ankles swell and start to feel hot and his neck becomes stiff. (Tr. 191-192). Plaintiff indicated he is able to sit in a chair for an hour. Plaintiff thought he could walk one hundred yards before he would need to rest. (Tr. 194). Plaintiff testified he maintained a driver's license but very seldom drove. (Tr. 199).

On an average day, plaintiff testified that he wakes up around 6:30 in the morning and talks to his boys while they get ready for school. (Tr. 196). He then sits around and watches television or walks around or sits outside. (Tr. 196-197). Plaintiff testified he usually sleeps about four hours a night and sometimes takes naps during the day. Plaintiff testified he can lift a gallon of milk with two hands and that he can bend down and touch his toes but has difficulty raising himself back up due to his back pain. (Tr. 198).

AO72A
(Rev. 8/82)

Ms. Bessie Bailey, plaintiff's wife, testified plaintiff could "hardly walk very far." (Tr. 205). Ms. Bailey testified plaintiff had not seen a doctor nor taken prescription medication since he lost his benefits. She testified she sometimes takes plaintiff's blood pressure at night because his heart seems to be racing. (Tr. 206-207). Ms. Bailey testified plaintiff sometimes tries to sweep the floor, help with the laundry and cook. (Tr. 208-209).

After listening to the ALJ's hypothetical question (Tr. 211), Mr. William D. Elmore, a vocational expert, testified that the hypothetical individual would be able to perform work as an assembler. (Tr. 212). If a limitation caused by tingling and numbness in the right hand was added to the ALJ's hypothetical, Mr. Elmore, testified that the hypothetical individual would be precluded from work as an assembler. (Tr. 213). However, if a sit/stand option was added to the hypothetical question, Mr. Elmore testified that the hypothetical individual would be able to perform assembly work. (Tr. 213).

The relevant time period in this case is November 1, 2002, plaintiff's amended alleged onset date, through July 13, 2005, the date of the ALJ's decision. The medical evidence within this time period consists of a general physical examination performed on February 7, 2003. (Tr. 152-158). At that examination, plaintiff complained of pain in his ankles, gout in his right ankle, residual neck pain from a fusion of C5-C6 and chronic headaches. (Tr. 152). Upon examination, the examiner noted plaintiff had forty degrees flexion, fifty degrees extension and eight degrees rotation both left and right of the cervical spine. (Tr. 155). Plaintiff had full range of motion in his shoulders, elbows, wrists, hands, hips and knees. Plaintiff had decreased dorsiflexion in both ankles and decreased plantar flexion in his left ankle. No muscle spasm was noted. The examiner noted plaintiff's right foot was hot, red and swollen. (Tr. 156). No muscle weakness or atrophy

4

was noted. Plaintiff was noted to limp to the right. A limb functioning examination revealed plaintiff could hold a pen and write, touch fingertips to palm, grip, oppose thumb to fingers, pick up coins with both hands and stand and walk without an assistive device. Plaintiff was unable to walk on heel and toes or to squat and arise from a squatting position. (Tr. 156). The examiner diagnosed plaintiff with gout, hypertension, arteriosclerotic heart disease with myocardial infarction, chest pain (probably cardiac), tobacco addiction, open reduction internal fixation (ORIF) of the left ankle, anterior cervical fusion at C5-6 and C7 and headaches. (Tr. 158). The examiner indicated plaintiff was able to dress and undress himself, to get on and off the exam table without help and that plaintiff moved slowly as if stiff and in pain.

Plaintiff also underwent a consultative evaluation performed by Dr. Rosen Sharma, a physical medicine and rehabilitation specialist, on March 24, 2005. (Tr. 169-171). Plaintiff's chief complaints were gout, numbness in both hands and arthritis. (Tr. 169). Plaintiff reported he had not seen a physician in three years. Dr. Sharma observed that plaintiff was extremely well developed, well nourished and "very well muscled in both upper and lower extremities." (Tr. 170). Plaintiff had full range of motion in both upper extremities, both ankles, feet, and both knees. (Tr. 170). There was full range of motion of the cervical spine except for extension that was restricted to thirty degrees. Trunk flexion was normal, and extension was normal. (Tr. 170). Plaintiff was able to heel walk and tandem walk. No muscle atrophy was noted. Straight leg raise was normal, plaintiff was neurologically intact, and muscle strength was normal in both upper and lower extremities. (Tr. 170-171).

Dr. Sharma's assessment was "remote neck surgery in the past, 2 level anterior cervical disketcomy C5-C6 and C6-C7 level with fusion in 1999, fracture of left ankle well healed,

5

remote incident of gout in both ankles in the past." (Tr. 171). Dr. Sharma opined that plaintiff could frequently lift and carry eleven to twenty pounds; occasionally lift and carry twenty to fifty pounds; sit eight hours in and eight-hour workday; stand/walk eight hours in an eight-hour workday; and frequently perform simple grasping, fine manipulation, handling objects, feeling objects, reaching and pushing/pulling/operating controls. (Tr. 172). In addition, Dr. Sharma related that plaintiff could frequently climb, balance, stoop, crouch, kneel, and crawl.

Prior to the relevant time period, the record establishes plaintiff has sought treatment for neck pain and residuals from a cervical fusion, ankle pain and surgery, hypertension, chest pain, acute bouts of gout, arthritis and depression. (Tr. 90-135).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

AO72A
(Rev. 8/82)

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges disabling pain resulting from his acute gout episodes and the residual pain from a cervical fusion at C5-6 and C7 and an ORIF of the left ankle. The medical evidence establishes that plaintiff did seek treatment for acute episodes of gout which responded well to treatment. (Tr. 101, 106, 119). We note, an impairment which can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted).

With regard to the residual pain caused by plaintiff's surgical procedures to his neck and ankle, the record reveals plaintiff was not taking any prescription pain medication and that he had

8

not sought treatment since 2002. At his consultative appointment with Dr. Sharma, plaintiff reported he had not seen a doctor in three years. Plaintiff's failure to pursue on-going and consistent treatment or to take prescription medication weighs against his allegations of disabling pain. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain); *See Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). Furthermore, in March of 2005, Dr. Sharma, a physical medicine and rehabilitation specialist, noted plaintiff had full range of motion in both upper extremities, both ankles, feet, and both knees; full range of motion of the cervical spine except for extension that was restricted to thirty degree; normal trunk flexion and extension; and normal muscle strength in both upper and lower extremities.

Plaintiff also alleges disabling hypertension. The record reveals that when he was taking his medication his blood pressure was controlled. (Tr. 107). *See Estes v. Barnhart,* 275 F.3d 722 at 725. Plaintiff also reported disabling headaches, however, this is no indication that he reported these headaches to his physicians. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain).

With regard to plaintiff's chest pain and alleged heart problems, the medical evidence reveals that in 1997, after experiencing chest pain and having an abnormal electrocardiogram, plaintiff underwent a stress cardiolyte study which was "perfectly normal" and an echocardiogram which was normal. (Tr. 98). After reviewing plaintiff's test results, Dr. Gary

9

V. Peterson opined plaintiff probably had hypertensive heart disease but did not see a need to restrict plaintiff due to a cardiac question. Plaintiff complained of chest pain again in July of 2001. Plaintiff underwent a second cardiolite study. The EKG portion of the study revealed a significant ST depression suggestive of a myocardial ischemia. (Tr. 102). However, the test was considered submaximal because plaintiff did not meet his target heart rate due to ankle pain. Dr. David E. Allen indicated that cardiolite images would help define whether ischemia was present. Dr. Ronald Pritchard opined that plaintiff's cadiolite images were unremarkable and that he did not see any "discreet defects to suggest scar formation or ischemia." (Tr. 103). Dr. Sharma reviewed these test results in March of 2005, and noted plaintiff achieved a workload of 9.5 mats which is a very significant indication of the ability to do heavy work. (Tr. 170).

Plaintiff alleges disabling hand numbness and tingling. The medical evidence shows plaintiff did report hand numbness to his doctor in April of 2001, and again to Dr. Sharma in March of 2005. However, there is no evidence that plaintiff sought treatment for the problem between 2001, and 2005. Plaintiff was also able to manipulate and use his hands during both consultative examinations in February of 2003, and March of 2005. (Tr. 156, 170-171). He was also noted to have one hundred percent grip strength at the February 2003, examination. Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff did not have any limitations with regard to the use of his hands.

Plaintiff also alleges disabling depression. A review of the record does show plaintiff has been prescribed medication to treat depression in the past, but there is no evidence that plaintiff sought treatment from a mental health professional on his own accord or through the referral of another physician. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of

AO72A
(Rev. 8/82)

evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Furthermore, the record reveals medication helped to control plaintiff's depression. The ALJ went on to find that plaintiff had no impairments with regard to daily living activities, social functioning and concentration persistence and pace. We find substantial evidence of record supporting the ALJ's determination that plaintiff does not have a severe mental impairment.

Although plaintiff contends that his failure to seek medical treatment is excused by his inability to afford treatment, plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment, due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). As such, we cannot say that his financial situation prevented him from receiving medical treatment.

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. Plaintiff testified that he did little more than sit around the house and watch television and occasionally walk and sit outside. However in October of 2002, plaintiff completed a Supplemental Interview Outline indicating he was able to take care of his personal needs, perform household chores, shop and do errands, cook, drive both familiar and unfamiliar routes, watch television, listen to the radio, read and visit with friends and family. (Tr. 69-70). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed

lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Further, the ALJ also considered the testimony of plaintiff's wife. After hearing her testimony, however, the ALJ properly concluded that her testimony was not fully credible because she had an interest in the outcome of the case. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A

AO72A
(Rev. 8/82)

disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a full range of medium work,[2] the ALJ considered plaintiff's subjective complaints and the medical records of his treating and examining physicians. In making this RFC determination, the ALJ noted the diagnoses of gout, hypertension, arteriosclerotic heart disease with myocardial infarction, chest pain (probably cardiac), tobacco addiction, ORIF of the left ankle, anterior cervical fusion at C5-6 and C7 and headaches made by the general examiner in February of 2003. The ALJ gave this assessment little weight because he found that the examining physician's diagnoses and opinion were not well supported by medically acceptable clinical and laboratory diagnostic techniques and were

---

[2] We note in the ALJ's findings point three indicates plaintiff can perform work-related activities that involve lifting less than twenty pounds. However, in the body of the ALJ's opinion and in later findings in point seven the ALJ indicates plaintiff can perform a full range of medium work. We note "[a]ny arguable deficiency in the opinion-writing technique of administrative law judge does not require court to set aside a finding that is supported by substantial evidence." *See Johnson v. Apfel*, 240 F.3d 1145, 1145 (8th Cir. 2001).

13

inconsistent with other substantial evidence of record. We note, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995); *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir. 2000). In this case, the ALJ properly explained why he chose to disregard this examiner's findings and we find substantial evidence to support the ALJ's decision.

In support of his RFC determination, the ALJ points to the medical assessment completed by Dr. Sharma indicating plaintiff is able to perform medium work activity. Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's determination that plaintiff is able to perform a full range of medium work.

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. If an ALJ finds, and the record supports the finding, that a claimant can perform the full range of activities in a work category, the ALJ may refer to the Grids found in 20 C.F.R. Part 404, Subpart P, Appendix 2 in making the ultimate conclusion of disability or non-disability. *See Harris v. Shalala*, 45 F.3d 1190, 1194 (8th Cir. 1995). Given our finding that substantial evidence supports the ALJ's determination that plaintiff is capable of the full range of medium work, we believe the ALJ properly relied on the Grids, eliminating the need for expert vocational testimony, in concluding that given plaintiff's age, education, work experience, and capacity for medium work, plaintiff was not disabled.

**Conclusion:**

Based on the foregoing, we recommend, affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and**

**recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of August 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)